UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JONATHAN SALMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19 CV 228 ACL |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Jonathan Salmon brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Salmon's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Salmon filed his application for benefits on January 12, 2016, claiming that he became unable to work on January 1, 2011. (Tr. 192-93.) In his Disability Report, Salmon alleged disability due to COPD, sleep disorder, chronic back pain, type II diabetes, peripheral neuropathy, small intestine bacterial overgrowth, irritable bowel syndrome, sleep apnea, and anxiety/stress. (Tr. 216.) Salmon was 51 years of age on his alleged onset of disability date. (Tr. 192.) His application was denied initially. (Tr. 84-90.) Salmon's claim was denied by an ALJ on May 11, 2018. (Tr. 10-19.) On December 19, 2018, the Appeals Council denied Salmon's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Salmon first argues that the ALJ erred "by failing to provide sufficient evidence to support the RFC." (Doc. 11 at p. 7.) He next contends that the ALJ erred "by failing to give valid reasons to discount Salmon's allegations regarding the effects of his obstructive sleep apnea." *Id.* at 10.

## II. The ALJ's Determination

The ALJ first found that Salmon last met the insured status requirements of the Social Security Act on December 31, 2014. (Tr. 12.) Salmon had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2011, through his date last insured of December 31, 2014. *Id.* The ALJ next found that Salmon had the following severe impairments: sacroiliitis, peripheral neuropathy, bilateral tarsal tunnel syndrome, irritable bowel syndrome, diabetes, thoracic and lumbar degenerative disk disease, and obstructive sleep apnea. *Id.* The ALJ found that Salmon did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments. (Tr. 15.)

As to Salmon's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift, carry, push or pull twenty pounds occasionally and ten pounds frequently. He could sit, stand or walk for six hours in an eight-hour workday. The claimant could climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally and crawl occasionally. The claimant could work at unprotected heights occasionally; could work around moving mechanical parts occasionally, and could operate a motor vehicle as a job duty occasionally. He could work in vibration occasionally.

*Id.* The ALJ found that, through the date last insured, Salmon was capable of performing past relevant work as a vice-president of finance and financial consultant. (Tr. 19.)

The ALJ therefore concluded that Salmon was not under a disability, as defined in the Social Security Act, from January 1, 2011 through December 31, 2014. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on January 12, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2014, the last date insured.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d);

*see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004);

20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### IV. Discussion

Salmon argues that the ALJ failed to develop the record with regard to Salmon's obstructive sleep apnea, resulting in an erroneous RFC. In Salmon's closely related second claim, he contends that the ALJ did not properly evaluate his subjective complaints regarding his obstructive sleep apnea.[2]

Defendant argues that the record was adequately developed for the ALJ to reach a decision. Defendant further argues that substantial evidence in the record, including evidence not explicitly discussed by the ALJ in her decision, supports the ALJ's reason for discounting Salmon's allegations of disabling sleep apnea.

As an initial matter, the Court notes that Salmon's insured status is relevant in this case. Salmon alleged an onset of disability date of January 1, 2011. His insured status expired on December 31, 2014. To be entitled to benefits under Title II, Salmon must demonstrate he was disabled prior to December 31, 2014. *See* 20 C.F.R. § 404.130. Thus, the period under consideration in this case is from January 1, 2011, through December 31, 2014.

At step two, the ALJ found that Salmon's obstructive sleep apnea was a severe

---

[2] Because both of Salmon's arguments pertain to his obstructive sleep apnea, the Court will only discuss evidence related to this impairment.

impairment. (Tr. 12.) The ALJ also discussed Salmon's obstructive sleep apnea when determining Salmon's RFC. She noted that, prior to the relevant period, pulmonary function testing showed a "moderate obstruction." (Tr. 18, 587.) A sleep study Salmon underwent in August 2010 revealed "moderate" sleep apnea. (Tr. 18, 747.) The ALJ noted that Salmon underwent a second sleep study during the relevant period that confirmed the earlier findings. (Tr. 18, 464.)

The ALJ acknowledged Salmon testified that he suffers from the effects of chronic fatigue related to his obstructive sleep apnea and insomnia. (Tr. 18.) For example, Salmon testified that he felt he was losing his "cognitive acuity." (Tr. 47.) Salmon had worked as a financial consultant and believed he was losing his "ability to concentrate enough and follow the logic needed to be able to continue providing that area of service." *Id.* He further testified that he was "extremely impaired," as far as his "awareness and intellectual acuity" because he was "exhausted all the time." (Tr. 48.) Salmon stated that beginning in approximately 2010 to the present, he was in bed the majority of the day due to exhaustion. (Tr. 48-49.) He explained that he was in a state of "constant weakness, exhaustion, and the lack of ability to concentrate and perform high-acuity, intellectual tasks" that he used to perform. (Tr. 49-50.)

The ALJ found that "the records are insufficient to draw conclusions about the effects of this condition during the relevant period." (Tr. 18.) She further stated that she had included restrictions limiting Salmon's exposure to hazardous workplace conditions, but "the records during the relevant period do not support a further reduction or a finding of disability." *Id.*

Salmon's claims are based in large part on the ALJ's statement that the "records are insufficient to draw conclusions about the effects of this condition during the relevant period." He contends that this statement constitutes an admission by the ALJ that there was insufficient

evidence in the record to determine Salmon's RFC, which required the ALJ to further develop the record. Because the ALJ did not do so, Salmon argues that the RFC is not supported by substantial evidence. Salmon further argues that the ALJ failed to provide valid reasons for discounting his subjective allegations regarding the effects of his obstructive sleep apnea.

The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 416.919a(b). "There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. § 416.912. "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). The Commissioner and the claimant's attorney both share the goal of ensuring that deserving claimants who apply for benefits receive justice. *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). The ALJ's duty is not never-ending and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n. 3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

The undersigned disagrees that the ALJ found there was insufficient evidence to determine Salmon's RFC during the relevant period. The ALJ's statement at issue was immediately followed by the ALJ's RFC finding and the statement that the records during the relevant period "do not support a further reduction or a finding of disability." (Tr. 18.) The Court agrees with Defendant that the ALJ intended to express that the records were insufficient *to support the limitations alleged by Salmon*, not that they were insufficient to make a determination.

The examination findings in the medical record, even though not explicitly cited by the ALJ, support the ALJ's determination. The Court will summarize the relevant medical evidence below.

On August 10, 2010, Salmon presented to sleep specialist Oscar Schwartz, M.D., with complaints of snoring, night waking, and insomnia that had been present since college. (Tr. 575.) Salmon reported he had undergone a sleep study fifteen years prior but it was inconclusive. *Id.* Salmon indicated that it takes him one to two hours to fall asleep most nights, his mind tends to run, and he has problems with sleep maintenance. *Id.* He reported his insomnia moderately limits his activities. *Id.* Upon examination, Salmon appeared fatigued and anxious. (Tr. 577.) Dr. Schwartz counseled Salmon on diet and sleep hygiene, and scheduled a sleep study to evaluate for obstructive sleep apnea. (Tr. 578-79.) Salmon returned on September 2, 2010, after undergoing a sleep study. (Tr. 569.) Dr. Schwartz indicated that the sleep study revealed sleep disordered breathing, which improved with the use of a CPAP. *Id.* Salmon appeared fatigued and anxious on examination. (Tr. 571.) Dr. Schwartz diagnosed Salmon with obesity, sleep apnea with insomnia, and snoring. (Tr. 572.) He prescribed sedative medication and use of a CPAP machine. (Tr. 572-73.)

Salmon saw gastroenterology specialists on five occasions during the relevant period for complaints related to irritable bowel syndrome. (Tr. 305-21.) At each examination, it was noted Salmon was in no apparent distress, and no "outward psychiatric abnormalities" were noted. *Id.*

Salmon presented to Michael N. Polinsky, M.D., on June 21, 2012, with complaints of low back and right leg pain. (Tr. 529.) Upon physical examination, Salmon was alert and oriented. (Tr. 531.) He had no memory deficit, a normal language pattern, a normal attention span, and a normal general fund of knowledge. *Id.*

Salmon saw family physician Demetrios V. Politis, D.O., on June 6, 2013, with complaints of sporadic left elbow pain and difficulty urinating. *Id.* He also reported chronic problems with fatigue and anxiety. (Tr. 342.) Upon examination, Salmon was alert and oriented to person, place, and time; his reflexes were normal; and his mood and affect were normal. (Tr. 343.) Dr. Politis' diagnoses included "malaise and fatigue," for which he ordered testing of Salmon's vitamin B12 level. (Tr. 344.) Salmon returned for a review of his bloodwork on August 12, 2013, at which time he reported symptoms of fatigue and foot paresthesia associated with his diabetes. (Tr. 359.) Upon examination, Salmon was alert and oriented, and his mood and affect were normal. (Tr. 359-60.) Dr. Politis diagnosed Salmon with a vitamin D deficiency, for which he prescribed Vitamin D2. (Tr. 364.) Salmon presented on December 26, 2013, with complaints of sore throat, cough, and fever. (Tr. 368.) On examination, Salmon was alert and oriented, and his mood and affect were normal. (Tr. 371.) On March 18, 2015, approximately three months after Salmon's date last insured, he presented with complaints of anxiety, with symptoms of depressed mood, excessive worry, insomnia, and irritability. (Tr. 382.) On examination, Salmon's mood was anxious and depressed, his affect

was blunt, and he was slowed and withdrawn. (Tr. 383.) Dr. Politis found Salmon was alert and oriented, and his cognition and memory were normal. *Id.*

The medical evidence of record reveals that, while Salmon suffered from obstructive sleep apnea and insomnia, the symptoms were not as severe as Salmon alleged. Salmon occasionally complained of fatigue at physician visits during the relevant period, but at each visit he was found to be alert and oriented, with a normal mood and affect. Although Salmon was anxious and depressed on examination shortly after his date last insured, Dr. Politis still found Salmon was alert and oriented, with normal cognition and memory. (Tr. 383.) The ALJ's finding that the medical evidence during the relevant period is not consistent with a disabling sleep disorder is supported by substantial evidence.

Salmon argues that, because the ALJ did not specifically cite the findings on examination discussed above, Defendant is prohibited from relying on this post-hoc rationalization. Defendant's brief does not, however, require the Court to consider new findings that were not present in the ALJ's decision. *See Alic v. Colvin*, No. 4:15-CV-1301-JAR, 2016 WL 5661622, at *8 (E.D. Mo. Sept. 30, 2016). The evidence Salmon cites as post-hoc rationalization – the findings on examination during the relevant period – was in the administrative record. "Judicial review of the ALJ's decision requires examination of the record as a whole." *Aubuchon v. Astrue*, No. 4:09CV465DDN, 2010 WL 2870566, at *11 (E.D. Mo. Jul. 19, 2010) (citing *Pates-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). The Court, therefore, has a duty to examine the entirety of the record to determine if there is substantial evidence to support the ALJ's RFC decision. *See id.*

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the

claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same).

If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. SSR 16-3p, 2017 WL 5180304, at *8 (SSA. Oct. 2017). *See also* 20 C.F.R. § 404.1529(c)(3) (explaining how the SSA evaluates symptoms, including pain). When evaluating a claimant's subjective statements about symptoms, the ALJ must "give full consideration to all of the evidence presented relating to subjective complaints," including a claimant's work history and observations by third parties and physicians regarding: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will

normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Here, the ALJ properly considered Salmon's testimony in conjunction with the objective medical evidence and other factors in determining his RFC. Salmon has alleged disabling symptoms resulting from his sleep apnea, but the objective medical evidence during the relevant period reveals he received conservative treatment and the findings on examination were benign. Significantly, despite Salmon's testimony of fatigue so severe that it resulted in cognitive impairment, examinations during the relevant period revealed Salmon was alert and oriented, and his cognition and memory were normal. There is no evidence that Salmon complained of loss of cognition or difficulty concentrating during the relevant period. The ALJ properly considered the lack of support in the objective medical evidence. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).

The ALJ also discussed Salmon's daily activities, which suggested that his symptoms were less severe than alleged. For example, the ALJ noted that Salmon testified that he checks emails and performs market research on a daily basis, has no problems with personal care, prepares his own meals and does laundry, regularly drives a car without assistance, shops in stores, retains the ability to manage his financial affairs, frequently spends time with family members, and takes his father to doctor appointments. (Tr. 18, 231-34.) The ALJ remarked that some of these "physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (Tr. 18.) An ALJ may discount a claimant's subjective complaints if they are

inconsistent with his activities of daily living. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013).

With regard to Salmon's work history, Salmon worked as a vice president of finance and a financial consultant until 2008. He testified that he stopped working full-time in 2008, due to problems with his consulting business, including a "crisis with one of my major clients" and a dispute with his business partner. (Tr. 37-38.) Salmon testified that the stress from this job caused him to quit working completely during 2010. (Tr. 38-39.) The undersigned notes that the fact Salmon stopped working, at least in part, due to reasons other than his impairments is inconsistent with his allegations of disability.

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. The ALJ limited Salmon's exposure to hazardous workplace conditions due to his obstructive sleep apnea and related symptoms. Salmon contends that the ALJ required additional evidence to develop the record with evidence addressing his functional abilities related to his obstructive sleep apnea and assess an RFC that is supported by some medical evidence. Although the medical record is sparse, it reveals that no abnormalities were found with respect to Salmon's cognition, attention, or memory. This evidence provides a sufficient basis for the ALJ's decision. The ALJ did not have a duty to seek additional medical evidence, because there were no undeveloped issues. *KKC ex rel Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016).

In sum, the ALJ considered Salmon's obstructive sleep apnea, but found that the objective medical evidence and evidence of Salmon's daily activities did not support the presence of limitations greater than those included in the RFC. The Court concludes that the ALJ's decision was well within the available zone of choice. The ALJ's decision reflects that

she considered the whole record, and her RFC determination is supported by substantial evidence therein.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

s/Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2020.